**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: October 11, 2017.**

_Craig A. Gargotta_
_____
**CRAIG A. GARGOTTA**
**UNITED STATES BANKRUPTCY JUDGE**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 12-52072-CAG |
| | § | |
| COLIN NEWBERRY AND | § | |
| LEBRTHA NEWBERRY, | § | |
| | § | CHAPTER 13 |
| Debtors. | § | |

### ORDER DENYING RESIDENTIAL CREDIT SOLUTION'S, INC. MOTION TO REOPEN CHAPTER 13 PROCEEDING PURSUANT TO 11 U.S.C. § 350(b)

Came on to be considered the above-numbered bankruptcy case, and, in particular, the Residential Credit Solution's, Inc. ("RCS") Motion to Reopen Chapter 13 Proceeding Pursuant to 11 U.S.C. § 350(b) (ECF No. 56) (the "Motion"), and Debtors' Response thereto (ECF No. 62). The Court has subject matter jurisdiction over this proceeding under 28 U.S.C. § 1334. Venue is proper under 28 U.S.C. § 1408(1). This matter is referred to this Court under the District's Standing Order of Reference. This matter is a core proceeding under 11 U.S.C. § 157(b)(2)(A) in which the Court may enter a final order. The Court notes that the Supreme Court's decision in _Stern v. Marshall_, 131 S. Ct. 2594 (2011), does not suggest or hold that this Court lacks authority to hear and enter final orders regarding a motion to reopen case under 11

1

U.S.C. §350(b).[1] The Court finds that this is a contested matter as defined under Fed. R. Bankr. P. 9014. The Court took this matter under advisement and finds that RCS's Motion should be DENIED.

## BACKGROUND AND PROCEDURAL HISTORY

RCS seeks to reopen the Debtors' chapter 13 case to correct, as RCS maintains, a scrivener's error in RCS's Statement in Response to Trustee's Notice of Final Cure Payment Pursuant to Fed. R. Bankr. P. 3002.1(g) (the "RCS Response"). Based upon the procedural history of this case, and RCS's failure to comply with the Bankruptcy Rules regarding the accounting for accrual of post-petition mortgage arrears, the Court finds that RCS's Motion is not well taken.

Debtors filed their chapter 13 petition, plan, schedules, and statement of financial affairs on July 2, 2012. (ECF Nos. 1 and 2).[2] Debtors listed a secured claim for an unpaid balance on a note secured by a deed of trust on Debtors' homestead and a pre-petition claim for mortgage arrears in Schedule D.[3] Debtors proposed to pay Bank of America's ("BOA") pre-petition claim for mortgage arrears in full through their chapter 13 plan. (ECF No. 2). Debtors' chapter 13 plan was confirmed on October 18, 2012. (ECF No. 23).

The Chapter 13 Trustee ("Trustee") filed her Objection to the Claim of BOA on August 23, 2014. (ECF No. 38). Trustee objected on two grounds: (1) the escrow analysis failed to state how the escrow arrears were determined; and (2) BOA failed to provide notice to Trustee and Court that it had transferred its note and Deed of Trust to the Secretary of Veterans Affairs. *See* Fed. R. Bankr. P. 3001(c)(1)(C) (requiring sufficient proof of an escrow analysis) and 3001(e) (requiring proof of the transfer with the court). An Agreed Order Resolving Trustee's Objection

---

[1] Unless otherwise noted, all section references are to the United States Bankruptcy Code, 11 U.S.C. § et seq.
[2] "ECF" is the Court's electronic docket in this case.
[3] RCS serves as the mortgage servicer for Secretary of Veterans Affairs. BOA was the previous note servicer.

to Claim of Bank of America was entered on February 27, 2014. (ECF No. 47). The Agreed Order disallowed payment of the escrow arrearage through the chapter 13 plan, but preserved the claim under § 1322(b)(2). Thereafter, Debtors received an inheritance that allowed them to pay off the entire amount of BOA's pre-petition mortgage claim and pay all other creditors in full. *See* (ECF No. 48) (stating that although BOA has failed to provide a notice of a transfer or assignment of lien, Debtors acknowledge that they are delinquent on their mortgage payments).

Trustee filed her Notice of Final Cure Payment Pursuant to Fed. R. Bankr. P. 3002.1(f) indicating that BOA's pre-petition claim for mortgage arrears paid in full. (ECF No. 49). Additionally, Trustee stated in her Notice:

> Within 21 days of the service of the Notice of Final Cure Payment, the creditor MUST file and serve a Statement as a supplement to the holder's proof of claim on the Debtors, Debtors' Counsel and the Chapter 13 Trustee, pursuant to Fed.R.Bank.P.3002.1(g), indicating 1) whether it agrees that the Debtors have paid in full the amount required to cure the default on the claim; and 2) whether the Debtors are otherwise current on all payments consistent with 11 U.S.C. § 1322(b)(5).

> The statement shall itemize the required cure or post-petition amounts, if any, that the holder contends remain unpaid as of the date of the statement. The statement shall be filed as a supplement to the holder's proof of claim and is not subject to Rule 3001(f). Failure to notify may result in sanctions.

(*Id.*). BOA filed its Statement in Response to Trustee's Notice of Final Cure Payment Pursuant to Fed. R. Bankr. P. 3002.1(g) stating the following:

> 1. Creditor agrees that the Debtor has paid in full the amount required to cure the default on the claim.

> 2. The Debtor is not otherwise current on all payments as they are due for 06/01/2014.[4]

Local Rule 3002.1(b) states that:

---

[4] The typographical error relates to the date in BOA's Statement in Response to Trustee's Notice of Final Cure Payment. The correct date in sentence two should be 06/01/601**3**, not 06/01/201**4**. As such, Debtors were delinquent for more than one year at the time the Trustee filed her Notice of Final Cure Payment.

If the holder of a claim, as defined in FRBP 3002.1, files a response which disagrees with the Notice of Final Cure Payment under 3002.1(f), or otherwise asserts that unpaid postpetition amounts are outstanding, and neither the debtor nor the trustee timely file a motion pursuant to FRBP 3002.1(h), the trustee is authorized to close the case.

Trustee and Debtors did not file a motion pursuant to Fed. R. Bankr. P. 3002.1(h) seeking a Court determination that the Debtors had made all post-petition mortgage payments. An Order Discharging Debtors was entered on July 28, 2014. (ECF No. 52). Ultimately, the bankruptcy case was closed and Debtors defaulted on the loan resulting in a foreclosure sale on January 5, 2017. (ECF No. 56, p. 3). Debtors have filed suit in state court against RCS for breach of contract, fraud, economic and actual damages, and other causes of action. (*Id*.).

## RCS'S MOTION TO REOPEN CASE

A bankruptcy court has the authority to reopen a bankruptcy case under § 350(b) "to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b) (2012). Bankruptcy Rule 5010 provides that "[a] case may be reopened on motion of the debtor or other party in interest pursuant to § 350(b) of the Code." Courts have generally held that those who may seek the reopening of a bankruptcy case is limited to a debtor, a creditor, or, in some cases a trustee. *In re Alpex Computer Corp.*, 71 F.3d 353, 356 (10th Cir. 1995). 11 U.S.C. § 101(10) defines "creditor" as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." RCS is the mortgage servicer of the Note executed by Debtor, Lebertha Newbery. Debtors listed BOA as a secured creditor on Schedule D and listed BOA under Section 1 and 2 of their chapter 13 plan.

The burden to establish such cause under § 350(b) is on the movant. *In re The Brooklyn Hospital Center*, 513 B.R. 810, 818 (E.D.N.Y. 2014); *In re Dudley*, 230 B.R. 96, 98 (Bankr. N.D. Tex. 1999). The term "for other cause" is broadly defined and gives a bankruptcy court discretion to reopen a closed case if such cause is shown. *In re Case*, 937 F.2d 1014, 1018 (5th

4

Cir. 1991) (first citing *In re Rosinski*, 759 F.2d 539, 540–41 (6th Cir. 1985); and then citing *Hawkins v. Landmark Finance Co.*, 727 F.2d 324, 326 (4th Cir. 1894)). When deciding whether to reopen a closed case, courts should generally consider the benefit to creditors, the benefit to the debtor, the prejudice to the affected party, and other equitable factors. *See In re Stein*, 394 B.R. 13, 15 (Bankr. E.D.N.Y. 2008) (stating that "courts may consider equitable concerns" and "the benefit to the debtor, the prejudice to the affected entity and the benefit to the creditors" (citations omitted)).

Bankruptcy courts consider several factors in determining whether to reopen a case including, but not limited to: (1) whether it is clear at the outset that no relief would be forthcoming to the debtor or Movant by granting the motion to reopen; (2) the length of time that the case was closed; (3) whether a non-bankruptcy forum (e.g., state court) has jurisdiction to determine the issue which is the basis for reopening the case; (4) whether prior litigation in the bankruptcy court implicitly determined that a state court would be the appropriate forum; (5) whether any parties would suffer prejudice should the court grant or deny the motion to reopen; and (6) the extent of the benefit to the debtor by reopening. *In re Easley-Brooks,* 487 B.R. 400, 407 (Bankr. S.D.N.Y. 2013) (citing *In re Otto*, 311 B.R. 43, 47 (Bankr. E.D. Pa. 2004)); *see also In re Pennington-Thurman*, 499 B.R. 329, 331 (B.A.P. 8th Cir. 2013); *In re Crocker*, 362 B.R. 49, 53 (B.A.P. 1st Cir. 2007).

RCS argues that it is appropriate for the Court to reopen the case because:

(1) RCS can then file an amended response to the final cure notice indicating that the loan was not current at the time the notice of final cure was sent;

(2) Although it was nearly two years from the date of closure to when the Debtors filed their suit in state court against RCS, RCS maintains that the mistake (inadvertent typo) could not be discovered until the Debtors filed their suit;

(3) RCS acknowledges that the bankruptcy court is not the only forum to resolve the final cure issues, but that it is the forum of choice because of its knowledge of matters concerning Rule 3002.1;

(4) RCS posits that its intent to reopen the case is specific and narrow and that it does not relate to the ongoing state court case;

(5) RCS argues that there is no prejudice to creditors because all unsecured claims were paid in full and the reopening of the case is only to correct a typo on its notice; and

(6) RCS acknowledges that the reopening of the case may not benefit the Debtors, but argues that the reopening of the case is merely to correct a clerical error that has now resulted in state court litigation.

(ECF No. 56, pp. 5–7).

RCS argues that based upon these factors the Court should examine in deciding whether to reopen the case, the majority of the factors, if not all, favor reopening the case. (ECF No. 66, p. 4–9). At the hearing on the RCS Motion to Reopen, the Court heard argument from RCS, Debtors, and Trustee's counsel. (ECF No. 76). Further, the Court heard oral testimony from RCS representative Melinda Dixon. (*Id.* at pp. 46–75).

Debtors' counsel noted that RCS waited nearly three years to assert that the Response was incorrect because RCS waited another six months from the date of determining the error until it filed its Motion to Reopen Case. (ECF No. 62). As such, Debtors argue that laches should preclude RCS from filing its Motion to Reopen. (*Id.*) Moreover, Debtors reason that if the harm was significant to RCS it should have not waited so long to act. (*Id.*) Debtors also argue that reopening their case could result in their discharge being "stripped". (*Id.*) Trustee agreed that if the case were reopen, given the Debtors' post-petition mortgage delinquency, Trustee might seek revoking the Debtors' discharge as improperly entered. (ECF No. 76, p. 41).

This Court ruled in *In re Heinzle*, 511 B.R. 69, 75–79 (Bankr. W.D. Tex. 2014), that once the term of a Chapter 13 plan is complete, the debtors may not modify their Chapter 13 plan. Further, the Court found that the failure to make post-petition mortgage payments was an event of default pursuant to the plan. *Id*. at 81–82. As such, the Court found that a denial of discharge, dismissal of the debtors' case, or leave of Court to convert the case to Chapter 7 was the appropriate remedy for the debtors' failure to make post-petition mortgage payments. *Id.* at 83. Here, Debtors and Trustee believe that a denial of Debtors' discharge may be appropriate given that Debtors' did not make all their post-petition mortgage payments.

The Court agrees with RCS that it is too late to revoke the Debtors' discharge. 11 U.S.C. § 1328(e) states that:

> (e) On request of a party in interest before one year after a discharge under this section is granted, and after notice and a hearing, the court may revoke such discharge only if—
>
> (1) such discharge was obtained by the debtor through fraud; and
> (2) the requesting party did not know of such fraud until after such discharge was granted.

In *Coughlin*, the Bankruptcy Court for the Eastern District of New York declined to revoke the debtor's discharge because there was "no questionable conduct" on behalf of the debtor. *In re Coughlin*, 568 B.R. 461, 476 (Bankr. E.D.N.Y. 2017). Similar to this case, the *Coughlin* trustee filed a Rule 3002.1 notice and the mortgage creditor filed a statement in response alerting the trustee that the debtors were several months in arrears. *Id*. at 475. Nonetheless, the debtors received their discharge under § 1328(e). *Id*. The trustee then filed a motion to vacate the debtor's discharge, relying on § 1328(e) and Fed. R. Civ. P. 60(b)(1). *Id*. at 474. The debtors in *Coughlin* did not represent that they were current on their post-petition mortgage payments. *Id*. at 476. The *Coughlin* court determined that there was no fraud committed by the debtors at the time of discharge and thus § 1328(e) was an improper basis for

vacating the discharge. *Id*. Similarly, there was no mistake that would necessitate vacating the discharge under Rule 60(b)(1). *Id*. at 478. The court also noted that "[r]evocation of a discharge is an extraordinary remedy." *Id*. In this case, Debtors did not commit any fraud nor did they misrepresent that they had made all of their post-petition mortgage payments. Rather, it was BOA that incorrectly stated that Debtors were not current as of June 1, 2014.

Trustee also argued that RCS did not comply with Fed. R. Bankr. P. 3002.1(c), because BOA never did file a notice of fees, expenses, and charges within 180 days from which the date the fees, expenses, and charges were incurred. (ECF No. 76, p. 38). The RCS representative testified that the Debtors only made two post-petition plan payments: November and December of 2012. (*Id*. at pp. 52–53). As such, by May 2013 BOA should have filed its notice under Rule 3002.1(c) itemizing the delinquent mortgage payments and associated fees. Further, Trustee argues that BOA's Response to the Trustee's Notice of Final Cure Payment was defective because in addition to stating that the Debtors were delinquent on their post-petition mortgage payments, RCS failed to file itemization of the amounts necessary to cure the unpaid post-petition fees. None was provided. (*Id*. at p. 39).

The RCS representative, Melinda Dixon, testified that RCS was in a wind down stage and would not be servicing loans in the future. Dixon explained that RCS took over the servicing of the loan in August 2012. (*Id*. at p. 51). Dixon stated that RCS received a number of documents from BOA, including the deed of trust, note, loan history, and escrow analysis. *Id*. Dixon agreed that the Response to the Trustee Final Notice of Cure Payment was incorrect because the due date for the loan at the time of BOA's response was June 1, 2013. (*Id*. at p. 55). She further testified that based on the monthly payment of $1,100.00 per month, and the number of missed mortgage payments, Debtors would have been delinquent roughly $14,000.00 mortgage payments as of June 1, 2014. (*Id*. at p. 59). In addition, Dixon stated that RCS's servicing

activities would have ceased at the time of BOA's foreclosure in January 2016. (*Id.* at p. 55). Dixon acknowledged that Debtors made several calls to RCS to ask if their mortgage was current at the time of their discharge. (*Id.* at p. 64.)

RCS recognizes that its error in its Response to Trustee's Notice of Final Cure has consequences in the Newberrys' state court action against RCS in which the Newberrys allege deceptive trade practices, breach of contract, and fraud. (ECF No. 66, at p. 1). Further, RCS admits that its typo in its Response to Trustee's Notice of Final Cure is the "factual foundation of their [Newberrys] claims against RCS and other defendants . . . ." (*Id.*) As such, despite RCS's arguments that it simply wants to correct a scrivener's error in one of its pleadings, the reality is that RCS wants to gain a litigation advantage in the state court suit. Changing the date of its Response to Trustee's Notice of Final Cure could have preclusive effect on the Newberrys' state court case.

BOA and RCS have failed to comply with the Bankruptcy Rules governing mortgage claims in this case. As the uncontroverted record indicates, BOA failed to notify the Court, Trustee, and the creditors that there was a post-petition mortgage delinquency and provide an itemization of BOA's post-petition charges by May 2013. BOA did not advise Trustee of a transfer of its claim. BOA did not correctly prepare its Response to Trustee's Notice of Final Cure and attach an itemization of all delinquent post-petition mortgage payments. RCS could have filed a motion with the Court asking the Court for relief given that RCS knew Debtors were delinquent on their post-petition mortgage payments, yet RCS did nothing. RCS waited nearly three years to correct the mistake in its Response to the Trustee's Notice of Final Cure and only did so when it became relevant in the state court case. Rule 3002.1 and its requirements are to avoid the types of mistakes made here by a mortgage servicer.

The Court sees little reason to reopen the case to allow RCS to gain an advantage when it

has been so materially deficient in administering the Newberrys' mortgage. Further, the Court finds the following factors weigh against reopening the case: (1) the amount of time between the closing of the case and the Motion to Reopen; (2) the reopening of the case is prejudicial to Debtors; and (3) there is a pending state court case that can resolve any remaining issues between Debtors and RCS. Moreover, RCS has foreclosed on the Newberrys' property, so reopening the case will do little good in correcting a typo regarding mortgage arrears when the property has been sold to a third party.

IT IS THEREFORE ORDERED that the RCS's Motion to Reopen Chapter 13 Proceeding Pursuant to 11 U.S.C. § 350(b) is DENIED. All other relief is DENIED.

# # #